UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FREDDRICK MACMILLAN,                          :
                                              :
                          Plaintiff,          :
                                              :           **MEMORANDUM**
            -against-                         :           **OPINION & ORDER**
                                              :
MILLENNIUM BROADWAY HOTEL,                    :           09-cv-6053 (PGG)
                                              :
                          Defendant.          :
-------------------------------------------------------------x

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Freddrick MacMillan alleges that Defendant Millennium Broadway Hotel discriminated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 et seq. Before the Court is Defendant's motion for summary judgment. For the reasons stated below, Defendant's motion will be denied.

## BACKGROUND

        Plaintiff, an African-American male, has been a Hotel employee for approximately 21 years.[1] (Def. R. 56.1 Stat. ¶¶ 3, 5-7) Between 1990 and 2004, Plaintiff worked as a Housekeeping Attendant. In 2004, he became an Engineer in the Hotel's Engineering Department, a position he holds today. (Id. ¶¶ 5-7) Beginning in April 2007, Plaintiff claims that he began to experience acts of racial harassment that ultimately created a hostile work environment.

---

[1] Unless otherwise indicated, the facts discussed herein are undisputed.

On or about April 18, 2007, Cromwell Bodden, another engineer working in the Hotel's Engineering Department, used the word "nigger" in Plaintiff's presence.[2] (Id. ¶ 13) Joseph Fariello, the Engineering Supervisor and a Caucasian, issued a verbal warning to Bodden for using that word in the workplace. (Id. ¶ 14)

In May 2007, Plaintiff became involved in a verbal altercation with Jaroslaw Zgoda, a Caucasian Hotel laundry attendant. (Id. ¶ 19) Plaintiff called Zgoda "son" and Zgoda referred to Plaintiff as "boy." (Id. ¶ 20) Zgoda was laid off shortly after this incident, because the Hotel's Laundry Department was shut down. (Id. ¶ 21) The Hotel initially threatened to terminate Plaintiff's employment, but later agreed to discipline Plaintiff by written warning. (Id. ¶¶ 22-23) The parties entered into a settlement agreement, in which Plaintiff released the Hotel of liability for any claims relating to the Zgoda incident. (Id. ¶ 24)

On May 30, 2007, Plaintiff filed a charge with the New York State Division of Human Rights ("DHR") alleging race discrimination relating to the incidents involving Bodden and Zgoda. (Id. ¶ 25) On March 27, 2008, the DHR issued a finding that there was no probable cause to believe that the Hotel had discriminated against Plaintiff. (Id. ¶ 26) The Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a right to sue letter on May 13, 2008. (Id. ¶ 27)

On January 23, 2009, Thomas Scudero, the Hotel's Regional Director of Property Operations and a Caucasian, brought a number of voodoo dolls to the Hotel. (Id. ¶¶ 44-45; Pltf. R. 56.1 Counter-Stat. ¶ 4) Scudero's duties include supervising the Engineering Department. (Pltf. R. 56.1 Counter-Stat. ¶ 2) The voodoo dolls had black faces and pink lips. (Id. ¶ 14)

---

[2] The parties dispute Bodden's race. Plaintiff asserts that Bodden has told him that he is Hispanic. (Pltf. R. 56.1 Resp. ¶ 13) Defendant has submitted an affidavit from Bodden in which he states that he refers to himself, and self-identifies as, a "Black American." (Bodden Aff., ¶ 3)

2

Scudero hung one of the dolls on Engineering Supervisor Fariello's bulletin board by pinning a two inch-long string attached to the doll's neck to the bulletin board.[3] (Def. R. 56.1 Stat. ¶¶ 46-47) Fariello reports directly to Scudero. (Pltf. R. 56.1 Counter-Stat. ¶ 3)

When Plaintiff first saw the voodoo dolls on Scudero's desk, he thought the dolls "were about [him]." (McMillan Dep. 134) He said to Scudero, "I hope those dolls ain't about me." He also asked Scudero, "should I be offended by these dolls?" (Id. at 134; Def. R. 56.1 Stat. ¶ 54) Scudero responded that the dolls weren't about Plaintiff and that he shouldn't be offended, explaining that he bought the dolls as souvenirs for his staff. (McMillan Dep. 134; Def. R. 56.1 Stat. ¶ 55) Plaintiff responded that so long as the dolls were not about him, "it's okay." (Id. ¶ 56; McMillan Dep. 184) Plaintiff told other Hotel employees, however, that he was very disturbed by the dolls. (Pltf. R. 56.1 Resp. ¶ 61; Pyne Aff., Ex. A, D204-05, D208, D214, D215) A number of other Hotel employees were likewise disturbed by the doll display, which appeared to them to evoke the lynching of black males. (Pyne Aff., Ex. A, at D171, D174, D197, D200, D219)

Nowrotam Paray, a "Watch Engineer"[4] assigned to the Hotel's Engineering Department, told Plaintiff that the doll hanging on Fariello's bulletin board "was meant to be Plaintiff." Plaintiff became very upset after Paray told him that the doll was intended to represent Plaintiff. (Def. R. 56.1 Stat. ¶ 60; Pyne Aff., Ex. A, D193-94) Paray then told Fariello that Hotel employees were offended by the voodoo doll and that he should remove it from his bulletin board, but Fariello refused to remove the doll. (Pltf. R. 56.1 Counter-Stat. ¶¶ 16-17)

---

[3] Plaintiff asserts that the string was wrapped around the voodoo doll's neck. (Pltf. R. 56.1 Resp. ¶ 47)

[4] "Watch Engineers" possess certain engineering licenses and supervise mechanics at the Hotel. Watch engineers also supervise engineers such as Plaintiff on weekends and at other times when a manager is not present. (Pltf. R. 56.1 Counter-Stat. ¶¶ 6-7)

3

On January 30, 2009 – after the doll had been on display for approximately a week – a union representative brought Kathleen Pyne, the Hotel's Director of Human Resources, to the Engineering Department and showed her the doll hanging on Fariello's bulletin board. (Def. R. 56.1 Stat. ¶ 48)  Andrew Dorough, the Hotel's Front Office manager, announced to Hotel employees that the Hotel would conduct an investigation into the matter. (Id. ¶¶ 49-50) Pyne interviewed twenty-nine employees regarding the incident. (Id. ¶ 51)  Mark Sanders, the Hotel's General Manager, later sent a letter to all Hotel staff stating that the Hotel does not tolerate discriminatory harassment of any kind. (Id. ¶ 52)

The Hotel did not discipline Fariello as a result of this incident. (Pltf. R. 56.1 Counter-Stat. ¶ 20)  Scudero was placed on paid leave for approximately a month while Pyne conducted her investigation, but likewise suffered no discipline. (Id. at ¶ 19; Stewart Decl., Ex. 3 at 55)  Scudero returned to his position after Pyne's investigation was completed.  At that time, and at the request of the Hotel's general manager, he publicly apologized to the staff, explaining that if he had offended anyone, he did not do so intentionally. (Scudero Aff., ¶ 25)

Plaintiff apparently filed a complaint with the EEOC, and on April 8, 2009, the EEOC issued Plaintiff a right to sue letter.[5]  (Cmplt. ¶ 6)

On June 22, 2009, Plaintiff reported to Hotel management that Luis Sierra, another engineer at the Hotel, had repeatedly called him "nigger" in the Engineering Office during a shift change. (Def. R. 56.1 Stat. ¶¶ 30-31)  Plaintiff claimed that Engineering Coordinator Izlau Chin was at her desk in the Engineering Office and would have overheard Sierra's use of that racial epithet. (Id. ¶ 32)  Robert Lafferty, the Hotel's then-Director of Human

---

[5] Neither party has set forth the substance of Plaintiff's 2009 EEOC complaint.  Based on the structure of the Complaint and the timing of the right to sue letter, the Court assumes that it addresses the voodoo doll incident.

4

Resources, investigated Plaintiff's claim, concluding that it could not be corroborated. (Id. ¶¶ 34-37; Lafferty Aff. ¶ 1) While Chin recalled hearing Plaintiff say to Sierra, "I would appreciate it if you didn't use that word," she did not hear Sierra use the term "nigger." Chin also told Lafferty, however, that she "wasn't really listening" to their conversation. (Pltf. R. 56.1 Resp. ¶ 37; Lafferty Aff., Ex. G at D231))

## DISCUSSION

### I.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted where the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation marks omitted). As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [H]e must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."

Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

"Mere conclusory statements, conjecture or speculation" by the plaintiff will not defeat a summary judgment motion. Gross v. Nat'l Broad. Co., Inc., 232 F. Supp. 2d 58, 67 (S.D.N.Y. 2002); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Instead, the plaintiff must offer "concrete particulars." Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir. 1999) (disregarding plaintiff's Rule 56(e) affidavit because it lacked "concrete particulars"); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

**II.    ANALYSIS**

A plaintiff raising a hostile work environment claim under Title VII must show "(1) [that he] is a member of a protected class; (2) that [he] suffered unwelcome harassment; (3) that [he] was harassed because of [his] membership in a protected class; and (4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." Monterosso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (citing Meritor Sav. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995)). Evaluating a hostile work environment claim involves reviewing the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Single instances of harassment are typically insufficient to establish a hostile work environment. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). However, a single incident of harassment may give rise to a hostile work environment claim if that incident is extraordinarily severe. Id.

A plaintiff making a hostile work environment claim must show "'not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive.'" Benn v. City of New York, No. 07-CV-326 (NGG)(JMA), 2011 WL 839495, at *9 (E.D.N.Y. Mar. 4, 2011) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)). Finally, the plaintiff must show "a specific basis for imputing the conduct creating the hostile work environment to the employer." Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (citing Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002)).

Hostile work environment claims brought under Title VII and Section 1981 are governed by the same legal standard. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000) (citing Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 347 n.2 (7th Cir. 1999) ("In analyzing § 1981 claims, we apply the same standards as in Title VII cases.")). "The elements of a claim for hostile work environment under the city administrative code are substantially similar to those under Title VII," Kramsky v. Chetrit Grp., LLC, Nos. 10 Civ. 2638(HB), 10 Civ. 9458(HB), 2011 WL 2326920, at *8 (S.D.N.Y. June 13, 2011) (citing Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 310 (2004); Fleming v. MaxMara USA, Inc., 644 F.Supp.2d 247, 267 (E.D.N.Y. 2009)), but "hostile work environment claims under the city code do not require the harassment leading to the hostile work environment to be as 'severe or pervasive' as that required under Title VII." Id. (citing Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 76 (1st Dept. 2009); Fleming, 644 F.Supp.2d at 268).

7

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that a rational jury could conclude that Plaintiff was subjected to a hostile work environment. Plaintiff's claim is founded on his supervisor's display of a voodoo doll – with a black face and pink lips – from an office bulletin board, hung by a noose attached to the doll's neck.[6] Plaintiff has offered evidence demonstrating that he and a number of other Hotel employees were deeply disturbed by this display, and believed that it evoked past lynchings of African-Americans. The doll was hung from the bulletin board for at least seven days, even after an employee complained that it was offensive. Although Hotel management ultimately conducted an investigation, neither the supervisor who brought in the dolls nor the supervisor who refused to remove the doll from his bulletin board was disciplined.

A workplace representation of racial violence[7] is "deeply troubling and often sufficient in itself to allow a finder of fact to conclude that the plaintiff was subjected to a hostile work environment." Brown v. Orange & Rockland Utils., Inc., 594 F. Supp. 2d 382, 392 (S.D.N.Y. 2009) (collecting cases). Numerous courts have denied summary judgment in cases involving display of a noose. See, e.g., Tademy v. Union Pac. Corp., 614 F.3d 1132, 1142 (10th Cir. 2008); Hollins v. Delta Airlines, 238 F.3d 1255, 1256-58 (10th Cir. 2001) (noting that "several hangman's nooses dangling from the ceiling above [the plaintiff's] work area" coupled with racist jokes, including one about lynching, were sufficient to give rise to an inference of a hostile environment); Vance v. S. Bell Tel. & Tel. Co., 863 F.2d 1503, 1511 n.4 (11th Cir. 1989) ("It is hard to imagine an incident of this sort taking place in 1984. The grossness of hanging an

---

[6] Plaintiff claims that the string was wrapped around the voodoo doll's neck in a fashion reminiscent of a noose; Defendant contends that a string was simply attached to the doll's neck. (See Def. R. 56.1. Stat. ¶ 47; Pltf. R. 56.1. Resp. ¶ 47; McMillan Dep. 142, 153) The parties' competing descriptions of the string must be resolved by a jury.

[7] Although Defendant contends that the display of the voodoo doll did not depict or suggest violence of any sort, a jury must decide what the display conveyed.

object resembling a noose at the work station of a black female is self-evident."), abrogated on other grounds by Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Bailey v. USF Holland, Inc., 526 F.3d 880, 883-87 (6th Cir. 2008) (upholding verdict for plaintiff on hostile work environment claim involving display of noose and numerous racist remarks); Wilson v. New York City Dep't of Transp., No. 01 Civ. 7398(RJH), 2005 WL 2385866, at *21-22 (S.D.N.Y. Sept. 28, 2005) (denying summary judgment on a hostile work environment claim where a noose was put outside plaintiff's locker).  Here, a black-faced doll was hung by the neck in Plaintiff's work area for at least seven days, by two of Plaintiff's supervisors.  Plaintiff has met his burden of demonstrating that this display was both subjectively and objectively hostile and abusive. Benn, 2011 WL 839495, at *9 (quoting Demoret, 451 F.3d at 149).

The display of the doll did not take place in a vacuum.  Plaintiff has alleged a number of racially derogatory comments in the workplace.  While Defendant argues that claims premised on these remarks are time-barred, Plaintiff may "us[e] the prior [time-barred] acts as background evidence in support of a timely claim" of workplace discrimination.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  Defendant has not argued that Plaintiff's claims premised on the display of the voodoo doll are not timely.

Finally, Defendant argues that the conduct here may not be imputed to the Hotel, because management exercised reasonable care to correct promptly the offending behavior and Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities available to him.  Because Scudero – one of Plaintiff's supervisors – was responsible for the voodoo doll incident, there is a basis to impute his conduct to Defendant.  See Mack v. Otis Elevator Co., 326 F.3d 116, 123 (2d Cir. 2003) ("[W]hen a 'supervisor with immediate (or successively higher) authority over the employee' has engaged in the complained of conduct, . . . the 'employer [may

be] subject to vicarious liability.'" (quoting Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998))).

When a supervisor's hostile conduct is imputed to the employer but no "tangible employment action" has been taken, "an employer may avoid liability if (a) it 'exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) . . . the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001) (quoting Burlington Industries, 524 U.S. at 765). "Those circumstances constitute an affirmative defense on which the employer has the burden of proof." Id. (quoting Burlington Industries, 524 U.S. at 765).

Because there are often material issues of fact about the promptness and adequacy of an employer's remedial efforts, summary judgment is frequently not appropriate. See Dobrich v. Gen. Dynamics Corp., Elec. Boat Div., 106 F. Supp. 2d 386, 394 (D. Conn. 2000) ("Although there was evidence that Defendant responded to Plaintiff's complaints, the critical issue was whether its response was adequate. Plaintiff claims that the pattern of ineffectual action continued throughout the course of her employment. The promptness and adequacy of an employer's response is generally a question of fact for the jury." (citing Howley v. Town of Stratford, 217 F.3d 141, 156 (2d Cir. 2000))); Sullivan v. Newburgh Enlarged Sch. Dist., 281 F. Supp. 2d 689, 702 (S.D.N.Y. 2003) ("the Second Circuit has recognized that determination of the existence of an impermissibly hostile environment is a 'mixed question of law and fact.' As such, it is 'especially well-suited for jury determination and summary judgment may be granted only when reasonable minds could not differ on the issue.'" (quoting Richardson v. New York State Dep't of Corr. Service, 180 F.3d 426, 437 (2d Cir. 1999))); Smith v. Town of Hempstead

Dep't of Sanitation Sanitary Dist. No. 2, No. 08-cv-3546 (ADS)(WDW), 2011 WL 2837504, at *7 (E.D.N.Y. July 19, 2011) ("'[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate.'" (quoting Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1998))); Wilson v. N.Y. City Dep't of Transp., No. 01 Civ. 7398(RJH), 2005 WL 2385866, at *23 (S.D.N.Y. Sept. 28, 2005) ("[t]o grant summary judgment on [the basis of the affirmative defense] . . . would be equivalent to granting a motion in favor of the [defendant] for judgment as a matter of law," which is "an extreme step" (citing Fairbrother v. Morrison, 412 F.3d 39, 53 (2d Cir. 2005)).

        Here, there are numerous factual issues about the promptness and adequacy of Defendant's remedial response. These issues range from, inter alia, the seven-day delay in removing the doll once an employee expressed objections, to Defendant's failure to impose any discipline on the supervisors involved with the alleged misconduct.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is DENIED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 26).

The parties are directed to review this Court's individual rules and to comply with their obligation to submit a joint pretrial order within 30 days of the date of this memorandum opinion and order. The Court will conduct a pretrial conference in this matter on September 23, 2011, at 9:30 a.m., in Courtroom 6B of the United States Courthouse, 500 Pearl Street, New York, New York.

Dated:   New York, New York          SO ORDERED:
         September 16, 2011

                                     _____
                                     Paul G. Gardephe
                                     United States District Judge